## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION

CASE NO.: ___2:19 CV 364 JRG/RSP___

CIVIL ACTION

PEARL E. DAVIS, THOMAS G. DAVIS and
JANICE L. SCOLES,

        Plaintiffs,

        v.

HILTON WORLDWIDE HOLDINGS INC.,
HILTON FRANCHISE HOLDING LLC,
HILTON DOMESTIC OPERATING
COMPANY INC., HILTON DOE whose true
name is unknown, O'REILLY
HOSPITALITY MANAGEMENT LLC,
KONE INC., PARK HOTELS & RESORTS
INC.

INCLUSIVE,

        Defendants.

PLAINTIFFS' ORIGINAL COMPLAINT FOR A CIVIL

CASE ALLEGING NEGLIGENCE, GROSS

NEGLIGENCE, INTENTIONALLY, AND/OR

KNOWINGLY CAUSING SEVERE BODILY INJURY TO

AN ELDERLY INDIVIDUAL, PRODUCT LIABILITY,

PREMISIS LIABILITY, STRICT LIABILITY, APPARENT

AGENT LIABILITY, AND SUPERIOR AGENT

LIABILITY.

(28 U.S.C. 1332; Diversity of Citizenship and Amount in
Controversy Greater than $75,000)



FILED

NOV 05 2019

Clerk, U.S. District Court
Texas Eastern

## The Parties to This Complaint



### Plaintiffs:

1.Pearl Elizabeth Davis;

    a)  501 W. Harrison St.

    b)  Jefferson, TX 75657,

    c)  903-665-2870,

    d)  pearledavis4@gmail.com,

    e)  Plaintiff Pearl Davis (hereafter Mrs. Davis) is domiciled in the Eastern District of Texas (Social Security number XXX-XX-4788),

2.Thomas Glenn Davis;

    a)  501 W. Harrison St.

    b)  Jefferson, TX 75657,

    c)  903-926-8766,

    d)  tomtech@sbcglobal.net,

    e)  Plaintiff Thomas Davis (hereafter Mr. Davis) is the son of Mrs. Davis and domiciled in the Eastern District of Texas (Social Security Number XXX-XX-4877),

3.Janice L. Scoles;

    a)  37 EMS D22B Ln.

    b)  Syracuse, IN, 46567,

    c)  574-658-3992,

d) Janicescoles@hotmail.com

e) Plaintiff Janice Scoles (hereafter: Mrs. Scoles) is the daughter of Mrs. Davis and is domiciled in the Northern District of Indiana (Social Security number XXX-XX-9750),

**Defendants:**

**Hilton Defendants:**

4. To the best of plaintiff's knowledge and belief Hilton Franchise Holding LLC is a Delaware limited liability corporation which has operations within the Eastern District of Texas and whose principal business address is 7930 Jones Branch Drive, Suite 1100, McLean, Virginia 22102 USA which is a wholly owned subsidiary of Hilton Domestic Operating Company Inc., whose equity is indirectly held by Hilton Worldwide Holdings Inc.

5. To the best of plaintiff's knowledge and belief Hilton Domestic Operating Company Inc. is a Delaware corporation which has operations within the Eastern District of Texas whose equity is indirectly held by Hilton Worldwide Holdings Inc. and whose principal business address is 7930 Jones Branch Drive, Suite 1100, McLean, Virginia 22102 USA.

6. To the best of plaintiff's knowledge and belief Hilton Worldwide Holdings Inc., is a Delaware corporation which has operations within the Eastern District of Texas and whose principal business address is 7930 Jones Branch Drive, Suite 1100, McLean, Virginia 22102 USA.

7. To the best of plaintiff's knowledge and belief Park Hotels & Resorts Inc. is a Delaware corporation which has operations within the Eastern District of Texas and whose principal business address is 1775 Tysons Boulevard, 7th Floor, Tysons, VA 22102 USA.

8. To the best of plaintiff's knowledge and belief, Defendant Hilton Doe is a U.S. Corporation who entered into a franchisee/franchisor relationship or licensing agreement which allowed O'Reilly to use the term "Embassy Suites by Hilton". O'Reilly has not responded to plaintiff's request for the identity of this entity, but the

identity should be available to plaintiffs during the discovery process. Defendant Parks or one of the listed listed Hilton defendants and they have operations within the Eastern District of Texas.

### Other Defendants:

9. To the best of plaintiff's knowledge and belief Defendant O'Reilly Hospitality Management LLC (hereafter: O'Reilly), is a Missouri Limited Liability Corporation which has operations within the Eastern District of Texas and whose headquarters are in Springfield Missouri.

10. To the best of plaintiff's knowledge and belief, defendant Kone Inc. (Hereafter: Kone) is a foreign owned corporation incorporated in the State of Delaware which has operations within the Eastern District of Texas with its principal place of business in Lisle, Illinois. KONE is owned entirely by KONE Holdings, Inc. (Delaware), which is owned by Finescal Oy (Finland), which is owned by KONE Corporation (Finland), which is publicly traded on the Helsinki Stock Exchange.

### Jurisdiction And Venue

11. This Court has jurisdiction of the since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between parties of different States.

12. Venue is proper in the Eastern District of Texas since a substantial part of the events or omissions giving rise to the claim occurred in the District.

13. Venue in the Marshall Division should be maintained for the convenience of plaintiffs and the fact witnesses. Defendants will not suffer harm since they would be required to obtain outside council and/or travel to any division within the Eastern District.

### Statement of Claim

14. On April 21, 2018, at the Embassy Suites by Hilton Hotel and Convention Center in Denton, Texas (hereafter: hotel) plaintiff, Mrs. Pearl Davis, suffered a broken femur.

15.     Each plaintiff suffered recoverable damages due to Mrs. Pearl Davis' broken femur.

16.     The injury to Mrs. Pearl Davis was caused by the use of NUD L or "nudging" mode as part the

elevator's operating scheme.

17.     The use of NUD L or "nudging" mode created an unsafe situation where which Mrs. Davis was shoved

by the elevator door which caused her injury.

18.     All the defendants are separately and independently responsible for the injury to Mrs. Pearl Davis due to

the intentional, knowledgeable, reckless, grossly negligent, and/or negligent acts and/or omissions committed

by each individually which led to the injury.

19.     Each defendant committed acts and/or omissions and if any defendant had used the care an ordinary or

prudent person would have taken and performed different acts, they would have prevented the injury from

occurring.

20.     Each defendant had an amount of control at times during the specification, design, construction,

installation, and/or customer approval phases of the construction of the hotel's elevators such that if any

defendant had exercised their right of control, they could have prevented the injury from occurring.

21.     Plaintiffs seek injunctive and declaratory relief along with all available compensatory and exemplary

damages, costs of this action, pre and post-judgement interest, reasonable attorney's fees, appeal costs, and

any other damages deemed proper by the court.

22.     Plaintiffs seek recovery of unlimited exemplary damages based on conduct described as a felony in

sections 22.02 and 22.04 of The Texas Penal Code since the relevant conduct was authorized, requested,

commanded, performed, and/or recklessly tolerated by a high managerial agent acting in behalf of the

corporation and within the scope of their office or employment.

**FACTUAL ALLEGATIONS**

23.     To the best of each Plaintiff's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances we believe there is a basis for each of the allegations.

24.     On or about April 21, 2018 Mrs. Davis was an invitee at the hotel has a registered guest and a registered attendee to the Take Off Pounds Sensibly Texas State Recognition Days Convention being held at the hotel's convention center,

25.     Between 6:00 and 7:00 P.M. on April 21, 2018 Mrs. Davis proceeded to enter an elevator on the third floor of the hotel at which time the elevator door began to close unexpectantly and struck Mrs. Davis on the right shoulder knocking her onto the opposite door facing whereupon she fell to the floor.

26.     Mrs. Davis remained on the floor until removed by emergency response personnel.

27.     Mrs. Davis was transported by emergency response personnel to the emergency department of the Texas Health Presbyterian Hospital of Denton (hereafter: hospital).

28.     At the hospital, Mrs. Davis was diagnosed with multiple fractures to her femur and Dr. Timothy Larson (hereafter: Dr. Larson) was called in to consult.

29.     On the next day Dr. Larson performed surgery on Mrs. Davis to reconstruct her femur.

30.     On or about 7:00 P.M. on April 21, 2018 Mr. Davis was informed of the incident and contacted his son, Mr. Adam Davis, and his sister, Mrs. Scoles, and inform them of the incident.

31.     As soon as practical Mr. Davis began to travel to the hospital with his charge, Mr. Christopher Brinson (hereafter: Mr. Brinson), during a heavy downpour from the home they share with Mrs. Davis which was more than 200 miles from the hospital.

32.     As soon as practical Mr. Adam Davis began to travel from his home in Northern Ft. Worth Texas to the hospital to act as next of kin for Mrs. Davis.

33.     As soon as practical Mrs. Scoles began to make arrangements to travel from her home in Northern Indiana to the hospital for the purposes of assisting Mrs. Davis.

34.     Mr. Davis arrived at the hospital at approximately 2:00 A.M. the night of the incident with Mr. Brinson and relieved Mr. Adam Davis as next of kin to Mrs. Davis.

35.     On April 22, 2018 Mrs. Scoles arrived at the hospital to assist Mrs. Davis while she remained at the hospital and rehab.

36.     On April 22, 2018 Mr. Davis and Mr. Brinson returned to the home they share with Mrs. Davis.

37.     On or about April 28, 2018 Mrs. Davis was transferred to Select Rehab (hereafter: rehab) in Denton Texas.

38.     On May 8, 2018 Mr. Davis ordered a bed rail from Amazon.com at a cost of $83.33 based on the recommendation from the rehab and the information that it was not a covered device on her medical insurance.

39.     On or about May 09, 2018 Mrs. Scoles went to the hotel and informed a hotel manager of the extent of Mrs. Davis injuries.

40.     On May 9, 2018 Mrs. Davis was discharged from rehab and returned home. Her grandson, Stephen Scoles, traveled from near Houston Texas to the rehab facility in order to take Mrs. Davis and Mrs. Scoles to Mrs. Davis' home in Jefferson, TX. Mrs. Davis paid Mr. Stephen Scoles $300 for his time and costs.

41.     On May 10, 2018 Mrs. Davis began in home rehabilitation therapy from Jordan Home Health Care of Jefferson Texas (hereafter: Jordan).

42.     On May 22, 2018 Mrs. Scoles returned to her home in Northern Indiana.

43.     On June 7, 2018 Mr. and Mrs. Davis traveled to Denton Texas for an appointment with Dr. Larson.

44.     While in Denton on June 7, 2018 Mr. Davis joined Mr. Steve Keener, the Operations Manager for the hotel, and Mr. Andy Davit, an investigator assigned by O'Reilly's insurance carrier Liberty Mutual Insurance, for a videotaped prearranged evaluation of the hotel's elevator operation and allowed one of the elevators to enter "nudging mode in order to examine its operation. Mr. Davis was informed by Mr. Keener that the elevator where the incident occurred had been examined and was shown to operate correctly shortly after the incident and no issues were found with the elevator. Mr. Keener also informed Mr. Davis that "nudging" mode was the correct operating mode.

45.     On July 5, 2018 Mr. and Mrs. Davis traveled to for an appointment with Dr. Larson.

46.     While in Denton on July 5, 2018 Mr. Davis spent a few minutes in order to videotape the sequence of elevator operation while in "nudging" mode.

47.     On July 7, 2018 Mrs. Davis was released from the care of Jordan.

48.     On July 19, 2018 Mr. Davis obtained a room at the hotel and, during the night, spent approximately half an hour videotaping and examining the operation of one of the elevators in "nudging" mode.

49.     On August 16, 2018 Mr. and Mrs. Davis traveled to Denton Texas for an appointment with Dr. Larson. Dr Larson dismissed Mrs. Davis from his care during that visit.

50.     From May 31, 2018, up until the time of this filing Mr. Davis has transported Mrs. Davis to her weekly T.O.P.S. meeting on most Wednesdays and will likely continue with that activity on most Wednesdays until Mrs. Davis feels comfortable driving herself that distance.

51.     On August 4. 2018 Mr. Davis transported Mrs. Davis to her quarterly Keep off Pounds Sensibly (K.O.P.S) meeting. Mr. Davis has transported Mrs. Davis to these meetings most quarters up until the time of this filing and will likely continue with that activity on most quarters until Mrs. Davis feels comfortable driving herself that distance.

## CLAIMS FOR RELIEF

## COMMON PLEADINGS

52.   Plaintiffs incorporate by reference as if fully set forth herein the allegations above.

53.   Plaintiffs will prove via a preponderance of the evidence that all of the claims and allegations which require that standard are true.

54.   Plaintiffs will prove using clear and convincing evidence that the claims and allegations which require that standard are true.

55.   Each plaintiff is interested in the welfare of all other plaintiffs and all harms to any plaintiff are harms to all plaintiffs.

56.   Plaintiffs individually sustained economic and/or non-economic losses, resulting in damages in an amount to be proven at trial

57.   As to all of the defendants, all of the relevant actions which led to the Plaintiff's harms and/or losses in all the claims and allegations in that the relevant acts were authorized, requested, commanded, performed, or recklessly tolerated by a person who had duties of such responsibility that their conduct reasonably may be assumed to represent the policy of the corporation on behalf of the corporation and within the scope of their office or employment.

58.   Each defendant's relevant actions in all the claims and allegations which preceded the injury were voluntarily performed.

59.   Each Defendants' individual relevant acts in all claims were a proximate cause of the harms and/or losses to the plaintiffs. Those harms and/or losses would not have resulted if any Defendant had independently acted differently.

60.     In all the claims, each defendant, intentionally, knowingly, and/or recklessly engaged in the conduct

alleged.

61.     Each defendant acted intentionally where the result of their conduct was to cause and/or threaten to

cause more than offensive touching to whomever was preventing the elevator door from closing with the

conscious objective or desire of forcing the person to move out of the path of the door in order to allow the

door to close.

62.     Each Defendant independently acted knowingly as to the nature and circumstances surrounding

"nudging" Mode' operation in that they knew that "nudging" Mode would operate at any time after the

elevator door was open for the preset period of time regardless of what was preventing the door from closing

and that it was reasonably certain to cause or threaten to cause more than offensive touching.

63.     Defendant's relevant acts in all the claims were reckless.

64.     As to all claims, each Defendant individually acted recklessly in that each actor was aware that

"nudging" mode was specifically designed to cause or threaten to cause more than objective touching but the

person performing the acts consciously disregarded the almost certain risk that the elevator door would make

or threaten to make physical contact with whomever was preventing the door from closing. Any ordinary

person would exercise care prior to forcibly closing a door but the persons who authorized, requested,

commanded, performed the selection of, and/or recklessly tolerated the use of "nudging" mode allowed their

machine to disregard the situation preventing a door from closing and allowed the machine to continue to

forcibly attempt to close the door.

65.     Each Defendant's relevant acts in all the claims were negligent.

66.     Each Defendant individually had a duty to protect those who used their elevators, or the elevators in a

building they had a measure of control over, from unreasonable risk of harm.

67.     Each Defendant individually breached their duty of care when they authorized, requested, commanded, performed, and/or recklessly tolerated the use of "nudging" mode in the elevators or the elevators in a building they had a measure of control over since its operation was specifically designed to cause or threaten to cause bodily injury in the form of more than offensive touching.

68.     In all of the claims each corporation individually had a measure of control at all times relevant to the planning, construction, and operation of the hotel sufficient to have independently prevented the use of "nudging" mode and thereby would have prevented the injury to Mrs. Davis.

69.     Each Defendant individually had knowledge sufficient enough to have foreseen that "nudging" mode would cause bodily injury in the form of more than offensive touching since that was it designed purpose.

70.     The use of "nudging" mode was the direct cause of Mrs. Davis' initial bodily injury which was the door shoving her to an extent that it was more than objective touching.

71.     Mrs. Davis' initial bodily injury led to all of the harms and losses incurred by each Plaintiff individually.

72.     Each Defendant's relevant acts in all the claims were grossly negligent.

73.     Each Defendant was independently culpable and/or liable for all their relevant acts in all claims.

74.     Plaintiffs are entitled to exemplary damages for each claim.

75.     Plaintiffs are entitled to unlimited exemplary damages for each claim.

76.     Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit in each claim.

77.     As to all Defendants, the defendants were grossly negligent in that the actors who authorized, requested, commanded, performed, and/or recklessly tolerated the use of "nudging" mode in the elevators, or the elevators in a building, they had a measure of control over at the time of their actions knew that the use of "nudging" mode and/or similar elevator door control methods involves an almost certain risk of causing or threatening to cause bodily injury in the form of more than offensive touching and considering that there was a

high probability that more serious injuries could occur and had occurred in the past, which they were aware of due to the number of claims from injuries the corporations had received from elevator doors, especially to persons of limited strength and/or mobility yet they proceeded with conscious indifference to the rights, safety, or welfare of others and compounded that risk with the elimination of the mechanical safety bar almost all users had come to expect to exist on elevator door edges.

78.     In all of the claims the corporations are independently responsible for the result since the injury to Mrs. Davis would not have occurred but for the conduct of each corporation acting alone.

79.     In all of the claims the entity or entities liable for the claim were responsible for causing the ultimate result since they independently desired the initial result of bodily injury in the form of more than offensive touching or threat thereof to occur to any or all individuals who are preventing the doors from closing.

80.     Defendant Kone designed, manufactured, and serviced the elevators at the hotel and could have prevented the use of "nudging" Mode on their own initiative and that act would have prevented Mrs. Davis injury.

81.     In all of the claims the use of Kone's "nudging" mode was the producing cause of Mrs. Davis' injury. Kone, among other things, incorporated it into the elevator's design. O'Reilly, among other things, approved or selected it as the operating mode, and the Hilton defendants among other things selected, authorized, requested, commanded, and/or recklessly tolerated its use for the hotel elevators.

82.     In all of the claims each defendant was aware that "nudging" Mode was designed purposefully to cause bodily injury, as defined by Texas laws, in that the elevator doors were designed for "more than offensive touching" with the purpose of provoking the person affected into their desired action of moving in order to allow the elevator doors to close in a misguided attempt to make the elevator operate more productively. This was a misguided since persons of physical means could have physically forced the door to remain open either by repeatedly producing the force required to cause the door to retract, repeatedly or continuously pressing the Door

Open Button on the elevator's Control Panel, repeatedly or continuously pressing the Call Button in the landing

area, or by placing an object in the doorway.

83.     In all of the claims each defendant was aware of or should have been aware of the potential for injury

presented to persons of limited mobility and/or strength who would be unable to move quickly enough to clear the

doorway, be physically unable to create the force sufficient to prevent the door from continuing to close while

they physically attempt to prevent the door from closing, and/or were unable to take any meaningful action to

prevent additional injury from occurring.

84.     In each of the claims each defendant was, or should have been, aware of the fact that the closing of elevator

doors is one of the leading factors in claims due to injury from elevators.

85.     Mrs. Davis relied on the assertion in public advertising of the hotel as "Embassy Suites by Hilton" and

by which defendant Parks and/or the Hilton defendants were perceived as the apparent agent and/or authority.

86.     In each of the claims each defendant was, or should have been, aware that the failure to install one of a most

common safety devices, the mechanical safety device, historically installed in most elevators and expected to be

found by most elevator users, along with the disabling of the electrical sensor during "nudging" mode's operation

of closing the elevator doors presented an unreasonably unsafe condition.

87.     Defendant Kone's actions in this claim included a fraudulent misrepresentation as to the safety of their

product. Kone knew that elevator doors were a cause of a large portion of claims related to injuries from

elevators. Kone did not mention in their product manual the potential for harm from using "nudging" Mode

nor the fact that many jurisdictions, building specifications, and authorities did not allow "nudging" mode to

be used. A more prudent manufacturer included a warning concerning the use of an operating mode precisely

like "nudging" Mode in their product manuals.

88.     Defendant Kone's actions in this claim included a fraudulent misrepresentation as to the safety of their

product. Kone specifically made multiple claims that presented NUD L Mode has a safe operating mode in

their online definition of NUD L Mode.

89.     Defendants O'Reilly and the Hilton defendants were aware of and specified,  authorized, requested,

commanded, performed, and/or recklessly tolerated the use of "nudging" mode for the elevator operation at the

hotel and each could have independently prevented the use of "nudging" mode on their own initiative and that

act by any of them would have prevented Mrs. Davis injury.

90.     No ordinary person if faced with the decision to close a door or not when they knew that someone or

something was blocking the door would only do so in extreme circumstances with knowledge of what is blocking

the door and the potential for injury which could have occurred if the door had been forcefully closed.

91.     There are many examples of prudent owners, superior agents, governmental, and quasi-governmental

agencies which take active measures to ensure that "nudging" Mode or a similar operating mode is not used in the

buildings where they have control.

92.     There are examples where prudent elevator manufacturers warn customers of issues related to elevator

operations similar to "nudging" Mode.

93.     The use of the term "Embassy Suites by Hilton" created a reasonable belief by Mrs. Davis and others

that Defendant Parks and/or the Hilton defendants had acted to create a safe and comfortable quality

environment for the guests of the hotel.

94.     Each defendant acted with malice in that their acts or omissions created an extreme degree of risk of

bodily injury in that each defendant knew that "nudging" Mode was created specifically for the purpose of

causing or threatening to cause bodily injury and they individually acted with actual and subjective awareness

of the purpose of "nudging" Mode yet proceeded with conscious indifference to the safety of the users of the

elevators.

95.     The definition of NUD L Mode shows that the elevator was intentionally designed to make or threaten to make bodily contact, with up to 35 pounds of force, for the purpose of causing whomever is in the way to move therefore that is an intentional infliction of bodily injury, or threat to inflict bodily injury, since it is " more than offensive touching". Since that was the purpose of nudge mode it is designed to inflict bodily injury and therefore bodily injury would be a substantial certainty.

96.     Each Defendant knew or should have known that most persons would consider a door closing while they were in the doorway to be offensive.

97.     Each Defendant knew the operation of "nudging" Mode was for the purpose of provoking persons who were preventing the door from closing into the action of clearing the doorway which the Defendant desired.

## FIRST CLAIM FOR RELIEF

## Unreasonably Dangerous Product Design by Kone Inc.

## Strict Products Liability and Gross Negligence

98.     Plaintiffs incorporate by reference as if fully set forth herein all allegations above.

99.     Defendant Kone Inc. caused Mrs. Davis' severe bodily injury on April 21, 2018 because of an unreasonably dangerous product design and marketing defect which led to all plaintiffs' losses.

100.    Defendant Kone had a duty to make safe or warn against any concealed, unreasonably dangerous conditions presented by their product of which they were or reasonably should have been aware of, but the user was not.

101.    Chapter 82.005 of Texas' Civil Practices and Remedies Code provides for a products liability action against a seller and/or manufacturer based on a design defect.

102.   Operating the elevator without the NUD L or "nudging" mode enabled would be a safer alternative and its implementation would involve nothing more than the selection of a different parameter already available on the elevator controls.

103.   The safer alternative design was available at no cost to all of the defendants.

104.   The use of NUD L or "nudging" mode is not required by any applicable code nor was its use required by the installation agreement.

105.   Kone Inc. designed the "nudging" mode to close the elevator door if the entryway is blocked by ignoring the photo-electric sensor and the design also eliminated the mechanical safety device which could be used with little effort to cause the elevator door to retract to the fully open position if pressed. This design led to all of the Plaintiffs' losses.

106.   Allowing the elevators Kone approved and/or permitted to operate at the hotel to operate with the door-blocked photo-electric sensor disabled and without a mechanical safety device in place directly led to all of the Plaintiffs' losses

107.   Kone marketed their elevators which use "nudging" Mode even though they knew of a potential risk of harm presented by the product but marketed it without adequately warning of the danger nor providing information concerning the available safer alternative.

108.   Defendant Kone knew or should have been aware that the disabling and removal of safety devices presented an unreasonable risk of injury to those who used their elevators. Particularly the increased risk presented to persons of limited mobility like Mrs. Davis.

109.   Operating the elevator without NUD L or "nudging" mode activated would not cause a substantial impairment to the elevator's utility.

110.   The use of "nudging" Mode was a producing cause of Mrs. Davis initial bodily injury which led to all plaintiffs' losses for which the Plaintiffs seeks recovery.

111.   At no time prior to the closing of the elevator door was Mrs. Davis warned that the door would close while she was in the doorway.

## SECOND CLAIM FOR RELIEF

### Defendant O'Reilly and the Hilton Defendants are liable for all of the

### plaintiffs' losses due to an unsafe condition on their premises.

112.   Plaintiffs incorporate by reference as if fully set forth herein all allegations above.

113.   Defendants had a duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not.

114.   At no time prior to the closing of the elevator door was Mrs. Davis warned that the door would close while she was in the doorway.

115.   Defendants knew, or should have known, that operating an elevator with the most commonly used safety devices eliminated or disabled would create an unreasonable risk of injury to those who used their elevators. Particularly to the increased risk presented to persons of limited strength and/or mobility like Mrs. Davis.

116.   Defendants knew about the dangerous condition.

117.   The unsafe condition was concealed.

118.   Mrs. Davis was not aware of the danger.

119.   Defendants did not take any action to eliminate the dangerous condition.

120.   The dangerous condition could have been eliminated at little or no cost by directing that Kone discontinue use of the "nudging" mode option.

121.   As a direct, legal, and proximate result of the injury caused by this dangerous condition, Plaintiffs

sustained economic and non-economic losses, resulting in damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### Each defendant's individual actions caused physical contact between

### Mrs. Davis and the elevator door which caused her severe bodily

### injury on April 21, 2018 which led to all plaintiffs' losses.

122.   Plaintiffs incorporate by reference as if fully set forth herein all allegations above.

123.   Each defendant is independently liable for causing severe bodily injury to Mrs. Davis in that their actions

directly led to the physical contact between her and the elevator door.

124.   The physical contact was intentionally initiated.

125.   The physical contact was more than offensive touching.

126.   Each defendant knew that the physical contact with the elevator door was a likely result of the use of

"nudging" Mode.

127.   Each defendant knew that the closing of the door would be regarded as a threat of physical contact to any

individual in the doorway.

128.   Each defendant knew that "nudging" Mode was designed to provoke people into clearing the elevator's

doorway.

129.    Each defendant knew that most persons would consider a door closing while they were in the doorway

to be offensive.

130.    At no time prior to the closing of the elevator door was Mrs. Davis warned that the door would close

while she was in the doorway.

## FOURTH CLAIM FOR RELIEF

### <u>All defendants are strictly liable for all of the plaintiffs' losses.</u>

131.    Plaintiffs incorporate by reference as if fully set forth herein all allegations above.

132.    The use of "nudging" Mode without a mechanical safety bar created an inherently dangerous condition in that "nudging" Mode is specifically designed to cause or threaten to cause bodily injury in the form of more than offensive touching.

133.    Kone as the elevator manufacturer and service provider, O'Reilly as the building owner, the Hilton defendants as the superior respondent and/or apparent agent and/or authority each individually are liable for injuries caused from the use of "nudging" Mode.

134.    The use of "nudging" Mode was the direct, legal, and proximate cause of Mrs. Davis' initial bodily injury.

135.    All of the plaintiff's losses were a direct result of the initial bodily injury to Mrs. Davis.

### <u>DECLARATORY and INJUNCTIVE RELIEF ALLEGATIONS</u>

136.    If this Court does not grant the injunctive relief sought herein, Plaintiff Mrs. Davis and others similarly situated will be at risk of injury from elevators using "nudging" Mode and control methods similar to NUD L Mode in the future.

137.    Many other elevator manufacturers and service companies install or service elevator control systems which operate similarly to Kone's NUD L "Nudging" Mode where the elevator doors will close when the users doesn't expect them to close and all persons affected would be subject to bodily injury while those of limited strength and/or mobility would be subject to severe bodily injury.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

## DECLARATORY RELIEF

138.    for a declaration that "nudging" Mode is unsafe and likely to or threatens to cause bodily injury to all

persons affected by its operation,

## INJUNCTIVE RELIEF

139.    for an injunction requiring all defendants found to share liability to ensure that "nudging" Mode or a

similar operating system is not used where there is no functioning mechanical safety device at any location

where they have control,

140.    for an injunction requiring all defendants found to share liability to inform all of the entities with whom

they have a contractual relationship with which have or can be expected to have control of elevators of the

factual findings of this action deemed relevant by the court and any declarative relief granted,

141.    for an injunction requiring all defendants found to be more than 20 percent liable to jointly create an

plan acceptable to the court to inform the Administrator of General Services, the Secretary of Health and

Human Services, the Secretary of Housing and Urban Development, the Secretary of Defense, the United

States Postal Service, each State's administrative agency tasked with developing elevator safety standards or

rules, the American Society of Mechanical Engineers, and/or the Elevator Escalator Safety Foundation of the

factual results of this action deemed relevant by the court and any declarative relief granted,

142.    to include within the injunction prayed for in the preceding paragraph and/or for a separate injunction

requiring all defendants found to be more than 20 percent liable to jointly present an plan acceptable to the

court to advertise the factual results of this action deemed relevant by the court and any declarative relief

granted in the most most popular trade journals or other publications designed to appeal to building operations managers and building designers,

143.     for further injunctive relief requiring the defendants subject to either of the injunctive reliefs requested in the previous two paragraphs to implement any plan approved by the court,

### ECONOMIC RELIEF

144.     for exemplary damages in an amount to be determined at trial,

145.     for unlimited exemplary damages in an amount to be determined at trial,

146.     for punitive damages in an amount to be determined at trial,

147.     for economic and non-economic damages, in an amount to be proven at trial,

148.     for pre and post-judgment interest and an adjustment for inflation where permitted,

149.     for reasonable attorneys' fees, and costs of suit, and

150.     for such other and further relief as this Court deems just and proper.

Respectfully submitted:

_____          _____          _____
Thomas G. Davis                           Pearl E. Davis                             Janice L. Scoles

11/04/2019                          Nov, 4, 2019                          10/29/19
_____          _____          _____
Date                                        Date                                        Date

Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint:

(1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

| | | |
|---|---|---|
| Thomas G. Davis | Pearl E. Davis | Janice L. Scoles |
| 11/04/2019 | Nov 4, 2019 | 10/29/19 |
| Date | Date | Date |